**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 23-23620-CIV-ALTONAGA/DAMIAN**

BETH COLLEEN MARTIN, an individual,

     Plaintiff,

v.

THE ELEVENTH JUDICIAL CIRCUIT OF
FLORIDA,
HON. IVONNE CUESTA, in her official
capacity as Circuit Court Judge for the
Eleventh Judicial Circuit of Florida,
SANDY T. FOX, in his individual and
official capacity as Guardian ad Litem, and
SHERRIE LEWIS-THOMAS, an individual,

     Defendants.

_____/

**<u>FIRST AMENDED COMPLAINT</u>**

Plaintiff, BETH COLLEEN MARTIN ("Plaintiff" or "Ms. Martin"), by and through

undersigned counsel in the above-styled action, hereby files this First Amended Complaint for

damages, declaratory relief, and injunctive relief against Defendants, the Eleventh Judicial Circuit

of Florida, Honorable Ivonne Cuesta, in her official capacity as Circuit Court Judge for the

Eleventh Judicial Circuit of Florida, Sandy T. Fox, in his individual and official capacity as

Guardian ad Litem for the Eleventh Judicial Circuit of Florida, and Sherrie Lewis-Thomas

(collectively, "Defendants"), for violations of Title II of the Americans with Disabilities Act of

1990 ("ADA"); the Rehabilitation Act of 1973 ("Rehabilitation Act"); and 42 U.S.C. § 1983, and

in support thereof states as follows:

*[THIS SPACE LEFT INTENTIONALLY BLANK]*

## INTRODUCTION

1.      This is an action under Title II of the ADA and Section 505 of the Rehabilitation Act through which Section 504 is enforced, to redress the unlawful disability-based practices taken against Ms. Martin in the Eleventh Judicial Circuit of Florida. *See* 42 U.S.C. § § 12132, 12182(a); 29 U.S.C. § 794(a). It is also an action to remedy the deliberate and continued deprivations of Ms. Martin's constitutional rights. *See* Fla. Const. Art. I, § 21; U.S. Const. amend. 14, § 1; 42 U.S.C. § 1983.

2.      Ms. Martin is a mother and current party to, *inter alia*, an ongoing dissolution of marriage ("DOM") action bearing case number 2020-015930-FC-04 in Miami-Dade County (hereinafter, the "Underlying Action"). Ms. Martin is also a "qualified individual with a disability" who needs, who requested, and who was approved for a reasonable accommodation in the Underlying Action.

3.      Defendants are the Eleventh Judicial Circuit of Florida, the judge to the Underlying Action, the Guardian ad Litem as agent for the court in the Underlying Action, and the individuals acting under color of law that have individually and collectively interfered with the exercise of Ms. Martin's rights under the ADA, including Ms. Martin's *approved* right to have a notetaker present in all proceedings.

4.      Unless and until Defendants are ordered to respect Ms. Martin's rights and adhere to the mandates of binding federal law, Ms. Martin will continue to be prevented from accessing, participating, and deriving benefits in the Underlying Action as entitled by established federal law.

5.      Ms. Martin will not stand idly while these all-important rights are cast aside by the very institutions and individuals tasked with safeguarding these rights. Accordingly, Ms. Martin brings suit to vindicate these rights.

## **PARTIES**

6.     Plaintiff Beth Colleen Martin is a natural person and a resident of Miami-Dade County, Florida and is otherwise *sui juris*. She is also a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2).

7.     Defendant Eleventh Judicial Circuit of Florida (the "Eleventh Judicial Circuit of Florida") is a state agency and body corporate of the State of Florida. The Eleventh Judicial Circuit of Florida is also "public entity" within the meaning of 42 U.S.C. § 12131(1) and a recipient of federal funds under the Rehabilitation Act of 1973.

8.     Defendant Ivonne Cuesta ("Hon. Cuesta" or "Defendant Judge") is a circuit court judge for Florida's Eleventh Judicial Circuit of Florida, currently presiding over the Underlying Action bearing case number 2020-015930-FC-04. Hon. Cuesta is being sued in her official capacity for declaratory and injunctive relief. Upon information and belief, she is domiciled in the Southern District of Florida.

9.     Defendant Sandy T. Fox, Esq. ("GAL Fox" or "Defendant Fox") is the court-appointed Guardian ad Litem for the minor child in the Underlying Action, appointed pursuant to Chapter 61, *Florida Statutes*. Defendant Fox is a natural person and a resident of Broward County, Florida with offices in Miami-Dade County, Florida, and is otherwise *sui juris*. Defendant Fox is being sued in his official capacity as agent of the Circuit Court for the Eleventh Judicial Circuit of Florida for declaratory and injunctive relief, and individual capacity for damages.

10.     Defendant Dr. Sherrie Lewis-Thomas ("Dr. Lewis-Thomas" or "Defendant Lewis-Thomas") is the court-appointed reunification therapist for the parties in the Underlying Action. Defendant Lewis-Thomas is a natural person and a resident of Miami-Dade County, and is otherwise *sui juris*. Defendant Lewis-Thomas is being sued in her individual capacity for damages.

<u>**JURISDICTION AND VENUE**</u>

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because it involves claims arising under federal law. *See* 42 U.S.C. §§ 1983, 12132, 12133, 12182(a); 29 U.S.C. § 794.

12.     This Court has personal jurisdiction over Defendants because Defendants are domiciled in Florida and committed tortious acts in this district.

13.     Venue is proper in this district under 28 U.S.C. § 1391(b) because all Defendants are residents of the State of Florida, the relevant records are maintained in this district, the majority of material witness live in this district, and a substantial part of the acts and omissions giving rise to this action occurred in this district.

14.     All conditions precedent to the maintenance of this action have been performed by Plaintiff, have occurred, or have been waived by Defendants.

<u>**GENERAL ALLEGATIONS**</u>

**Statutory and Constitutional Background**

15.     State courts provide essential state services.

16.     In recognition, Florida's Constitution guarantees the courts "be open to every person for redress of any injury." Fla. Const. Art. 1, § 21. It further commands "justice shall be administered without sale, denial, or delay." *Id.*

17.     These rights, dubbed "access to courts," are fundamental. Governmental agencies and actors therein are without authority to deny anyone within Florida's jurisdiction access to its courts. *Id*. Nor can they "deny any person within its jurisdiction the equal protection of [its] laws." U.S. Const. amend. 14, § 1.

18. "Access to courts" was so heavily integrated into the common law the framers felt no need to provide for it in the Federal Constitution. *See* Judith Anne Bass, *Article 1, Section 21: Access to Courts in Florida*, 5 Fla. St. U.L.R. 871, 871 (1977). And although not expressly provided for, "access to courts" is established through a pervasive theme: found in the first amendment's "petition for redress of grievances" provision, the fourteenth amendment's "equal protection" and "privileges and immunities" clauses, and in the fifth and fourteenth amendments' right to "due process." *Id.* at 871–72.

19. Congress has created a cause of action against any person who, under color of state law, violates a person's federal constitutional or statutory rights. *See* 42 U.S.C. § 1983. This includes access to courts.

20. Congress expressly recognized that "qualified individuals with a disability" enjoy the same constitutional "access to courts," but are often hindered in access, and subjected to disparate treatment. 42 U.S.C. § 12101(a). Congress also recognized this could—as seen here— result in deprivations of fundamental rights. *Id.*

21. To bridge that gap and provide a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities," Congress enacted the ADA in 1990. *See id.* § 12101(b)(1).

22. The ADA is built upon the foundation laid by the Rehabilitation Act, which prohibits public entities in receipt of federal funds from denying persons with disabilities the benefits of its programs, services, and activities. *See* 29 USC § 794(a). The ADA is broader in scope, with Title II covering all activities of State government regardless of its size or receipt of federal funds.

23. Florida State Courts are "public entities" subject to Title II's prohibition against discrimination, which applies with equal force to all services, programs, and activities they provide or make available. *See* 42 U.S.C. §§ 12131(1), 12132; *see also* 28 C.F.R. § 35.130(b).

24. Title II is authoritative: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

25. As "public entities" under Title II, Florida State Courts, including the Eleventh Judicial Circuit Court, are required to ensure their disabled litigants have an equal opportunity to participate in, and enjoy the benefits of, their services, programs, or activities. When necessary to provide equal access to a qualified individual with a disability, Title II requires Florida State Courts to: (1) make reasonable modifications to policies and practices; (2) remove architectural, communication, or transportation barriers; and (3) provide "auxiliary aids and services." *See* 28 C.F.R. § 35.160 (requiring a public entity to "furnish auxiliary aids and services"); *id.* § 35.104 (defining auxiliary aids and services to include, *inter alia*, "notetakers").

26. Title II abrogates state immunity for such violations, specifically authorizing private suits for money damages "for such a violation to the same extent as . . . any public or private entity[.]" *See* 42 U.S.C. § 12202; *U.S. v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."). The individual state actor Defendants named herein are additionally subject to suit under 42 U.S.C. § 1983.

27. But despite these Constitutional rights and "several legislative efforts to remedy the problem of disability discrimination," Congress, the United States Supreme Court, and the Florida legislature continue to agree: "[t]he unequal treatment of disabled persons in the administration of judicial services has a long history" and will continue to persist. *Tennessee v. Lane*, 541 U.S. 509, 531 (2004).

28. Sadly, the "unequal treatment of disabled persons in the administration of judicial services" persists in Hon. Cuesta's courtroom.

29. Sadly, the "unequal treatment of disabled persons in the administration of judicial services" persists outside of Hon. Cuesta's courtroom, extending to her own court-appointed Guardian ad Litem and her own court-appointed reunification therapist.

30. Sadly, the very discrimination Congress attempted to eradicate persists in the Eleventh Judicial Circuit of Florida. This illegal discrimination not only affects the integrity and efficacy of the Miami-Dade County judicial system, but it also erodes public confidence in government and deprives its citizens of fundamental rights without due process of law. This discrimination must end.

**Ms. Martin is a Qualified Individual with a Disability**

31. Ms. Martin suffers from Systemic Lupus Erythematosus—an autoimmune disorder—as well as Fibromyalgia and Chronic Migraines. These medical conditions—which present through, *inter alia*, both "lupus fog" and "fibro fog"—substantially limit one or more of her major life activities, including her ability to hear, think, write, concentrate, remember, process and chronologically organize information, and ultimately, communicate. Accordingly, Ms. Martin has a "disability" under the broad definition of the ADA.

32. Ms. Martin is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2) because she is entitled to participate in the Underlying Action and access the courts for redress of any grievance, with or without the use of modifications/aids/services.

**The Underlying Action**

33. The Underlying Action began on October 13, 2020, after Ms. Martin's then-husband filed for dissolution of marriage. From the inception of the Underlying Action, all proceedings were held remotely.

34. On or around November 23, 2020, Hon. Cuesta—the judge presiding over the Underlying Action—entered an "Order Appointing Guardian Ad Litem," which order appointed Sandy T. Fox as the Guardian ad Litem of Mr. and Ms. Martin's (collectively, the "Underlying Parties") minor child.

35. On or around February 16, 2021, Hon. Cuesta entered an Order on Case Management Conference, which order appointed Dr. Sherrie Lewis-Thomas as the Underlying Parties' reunification therapist.

36. On or around May 25, 2022, Ms. Martin's counsel noticed an in-person deposition for GAL Fox. This was slated to be the first in-person *anything* in the Underlying Action.

37. Approximately two weeks later, GAL Fox filed a Motion for Protective Order ("MPO"). Therein, the motion stated: "The Guardian Ad Litem's counsel was, recently, ill for several weeks and has autoimmune issues, and the Guardian Ad Litem has genuine and good faith reasons for not being able to appear in person for the taking of his deposition . . . ."

38. On or around June 16, 2022, the trial court held a hearing on the MPO. After hearing argument explaining why *temporary* autoimmune issues should move the in-person deposition to a remote deposition, the trial court allowed the GAL's deposition to be conducted virtually.

39. Four days later, Ms. Martin—who has her own, *permanent* disabling autoimmune issues—filed a Verified Motion to Conduct all Matters Virtually. Therein, Ms. Martin stated in part: "Due to her medical conditions, along with the rise in COVID-19 cases throughout South Florida, the Mother respectfully requests this Court afford her the **same relief** afforded to the Guardian Ad Litem and counsel [for the Guardian Ad Litem *and* the Husband] and conduct all future proceedings in this matter virtually as well as order that any matters that arise in connection with this litigation proceed virtually."

40. Although the matter was noticed for hearing on June 29, 2022, it was rescheduled for September 29, 2022.

### Ms. Martin's Request for Accommodations

41. After the hearing was rescheduled, Ms. Martin recognized the possibility that, for the first time, proceedings and ancillary matters in the Underlying Action may shift from remote to in-person.

42. Accordingly, and pursuant to her rights as a "qualified individual with a disability," on July 15, 2022, Plaintiff submitted a request for modifications/aids/services to the ADA Coordinator for the Eleventh Judicial Circuit, Ms. Aliean Shoun Simpkins ("ADA Coordinator Simpkins"). *See* Exhibit A.

43. Ms. Martin's request was proper in both substance and form. *See* Exhibit A. It identified Ms. Martin's disabling conditions; it sought reasonable modifications/aids/services that would not cause an undue burden; and it articulated why those modifications/aids/services were necessary to meaningfully access, and participate in, the Underlying Action. *See id.* ("My disabilit[ies] make it hard for me to communicate with government systems and parties in the court

system [due to my] migraine headaches, fatigue, loss of syntax, stress exacerbation, and symptom exacerbation.").

44. Ms. Martin's request for accommodations was modest: she sought a notetaker. One that would assist her to communicate in, and comprehend the nature of, the Underlying Action and its ancillary matters. And one that she even offered to pay for *at her own expense*. *But see ADA Request for Accommodations*, Eleventh Jud. Cir. Fla., https://www.jud11.flcourts.org/ADA-Request-for-Accommodations (last visited Sept. 18, 2023) ("Accommodations that are granted by the state courts are made at no cost to qualified individuals with disabilities.").

45. Because of COVID-19 and Ms. Martin's autoimmune disease, Lupus, Ms. Martin also requested the ability to appear remotely.

46. Federal law entitled Ms. Martin to the accommodations she sought, but Defendants—collectively, individually, and systemically—failed to provide them.

47. In fact, for over a month, ADA Coordinator Simpkins took zero action.

48. While ADA Coordinator Simkins sat idly on Ms. Martin's lawful request for accommodations, Hon. Cuesta *did* take action.

49. Indeed, on August 9, 2022, Hon. Cuesta issued an "Order Authorizing Guardian Ad Litem to Conduct Home Visit." There, the trial court ordered that GAL Fox "shall be authorized to conduct home visits with the minor child at the Mother's residence." This would be the *first* in-person contact since the inception of litigation.

50. In anticipation of her in-person meeting, counsel for Ms. Martin emailed GAL Fox: "By the way, you should be advised that Ms. Martin is entitled to and will have a note taker with her pursuant to the ADA during her meeting with you."

51.     GAL Fox retorted: "Why is it necessary for Ms. Martin to have a notetaker present with her during my observation of her and [the minor child]?"

52.     After some back and forth, on August 16, 2022, GAL Fox again emailed Ms. Martin's counsel:

> I am writing to follow up regarding your client's allegations that she is disabled and requires a note taker. I have spoken with the ADA office of the Eleventh Judicial Circuit Court and they do not have a record of Ms. Martin requesting ADA accommodations nor do they provide the services of a note taker. Again, why is it necessary for Ms. Martin to have a notetaker present with her during my observation of her and [the minor child]?

53.     Stunned by: (i) GAL Fox's continued instance that Ms. Martin lacks entitlement to accommodations under the ADA; (ii) ADA Coordinator Simpkins' apparent inaction; and (iii) either ADA Coordinator Simpkins' misrepresentation that "they do not have a record of Ms. Martin requesting ADA accommodations," *or* GAL Fox's misrepresentation that he had "spoken with the ADA office," Ms. Martin followed up with ADA Coordinator Simpkins by email. *See* Exhibit B.

54.     In her email, Ms. Martin wrote: "I wanted to follow up on my request of July 15, 2022 for accommodation under the ADA. As I explained, I will cover the cost of my disability support personal/note taker, so there are no funds needed to be expended by the Court." *Id*. Ms. Martin then reiterated the accommodations were of "vital importance to [her] health and safety" and stressed the importance of timeliness as she was "in need of this accommodation in under 2 weeks, and [she] first requested [it] over 4 weeks ago." *Id*.

55.     Thereafter, on August 17, 2022, ADA Coordinator Simpkins contacted Ms. Martin via phone. In conversation, **ADA Coordinator Simpkins expressly *granted* Ms. Martin a notetaker and a medical support person**. Further, ADA Coordinator Simpkins *rejected* Ms. Martin's request for remote proceedings, explaining that such request is at the trial court's behest.

56.     Ms. Martin asked ADA Coordinator Simpkins to follow up in writing. ADA Coordinator Simpkins did so that day. *See* Exhibit B.

57.     Thus, as of August 17, 2022, *all* parties to the Underlying Action were on *constructive* notice that Ms. Martin required—and was granted—accommodations in the form of a notetaker.

### The Disability Discrimination

58.     On or around September 14, 2022, GAL Fox emailed Ms. Martin's counsel: "I am very concerned that [Ms. Martin's] latest efforts to interfere with the Guardian Ad Litem's investigation also include **<u>new allegations</u>** that she is disabled and requires a note taker during my home visit."

59.     Yet, Ms. Martin's "allegations" were far from *new*. For example:

   a. On December 23, 2020—exactly one month *after* the appointment of GAL Fox and nearly two (2) years *prior* to GAL Fox's email—Ms. Martin filed her "Verified Answer and Counter Petition for Dissolution of Marriage with Minor Child." There, Ms. Martin *swore*: "The Wife is permanently disabled . . . . Since 2000, the Wife has suffered from Lupus . . . ."

   b. On April 8, 2021, during the deposition of Ms. Martin in a related Domestic Violence proceeding—with GAL Fox *appearing on the record*—Ms. Martin *swore, under oath*:

   > I have lupus, systemic lupus erythematosus, and I have fibromyalgia.
   > . . .
   > Apparently with lupus you're born with the genetic makeup to have lupus and it is inactive until some point in your life when it becomes active, and if you can keep it in remission it's the best way to handle lupus. And if you have come out of remission, you have to take some pretty strong medicine to handle it to avoid the effects of lupus or you

can manage your stress and keep it in remission. So it became active -- I started having the symptoms in 2000, '98, '99.

. . .

I currently take -- I have extreme headaches and I have -- in fact, it's very cold in here. I have Raynaud's which makes you lose feeling in your fingers and toes for lack of circulation. It's very common with lupus. And I have other symptoms of lupus that are present all the time, but that doesn't mean that it's full scale active.

. . .

[My other present symptoms include] Food allergies, other like environmental allergies, allergies to detergents, perfumes, food sensitivity. My body temperature is normally 97.6, so I'm cold all the time which is why my fingers and toes will get numb in a very cold restaurant and/or here which is very cold. You have headaches. You can be tired. Fibromyalgia is one of the symptoms of lupus which I have, so I'm tired quite a bit. I feel exhausted. The headache is probably my worst symptom.

60.     Meanwhile, on September 29, 2022, a hearing was held on Ms. Martin's "Verified Motion to Conduct All Matters Virtually." Despite Ms. Martin's receipt of approved accommodations by ADA Coordinator Simpkins, and despite hearing argument from Ms. Martin's counsel that: (i) the requested relief is "necessary to accommodate her disability"; (ii) Ms. Martin "suffers from two autoimmune diseases, including lupus and fibromyalgia"; and (iii) that "Your Honor has previously granted similar requests in certain identifiable instances in favor of both [GAL] Fox and [Mr. Martin's Counsel] Mr. Abramowitz as well as [GAL Fox's Counsel] Ms. Hass," Hon. Cuesta *denied* Ms. Martin's motion without prejudice.

61.     Hon. Cuesta's denial is not the result of a poor or misinformed ruling. Rather, it is textbook discrimination.

62.     Indeed, Ms. Martin has a *documented and bona fide disability*, with an *actual and legitimate* need for accommodations. Hon. Cuesta's denial of these accommodations—coupled with her granting accommodations for three (3) parties to the proceeding who have *neither a documented nor bona fide disability*—can only be explained by discriminatory animus against Ms.

Martin as a result of her disability. *But see* Fla. Code Jud. Conduct Canon 3(B)(5) ("A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon . . . disability . . . and shall not permit staff, court officials, and others subject to the judge's direction and control to do so.").

63. There is more. On or around November 8, 2022, GAL Fox filed his "Motion to Compel Unmonitored Home Visit to Mother's Residence" ("Motion to Compel"). Frustrated that Ms. Martin sought to assert her rights under the ADA to have a notetaker present during the home visit, GAL Fox asserted Ms. Martin "has alleged that she is disabled and now requires the assistance of a 'notetaker' during the [GAL's] home visit."

64. In his Motion to Compel, GAL Fox further lambasted Ms. Martin for her continuous attempts to "thwart" and "imped[e]" the GAL's ability to investigate in the Underlying Action.

65. The relief GAL Fox requested made clear the Motion to Compel was brought for the dual purpose of discriminating against Ms. Martin on account of her disability, and avoiding Ms. Martin's requested, approved, and *required* accommodation: "[GAL Fox], respectfully, [sic] requests the entry of an order, compelling the Wife to permit the [GAL] to conduct an unmonitored home visit to her residence; to occur only in the presence of the Wife and the minor child. Additionally, the [GAL], respectfully, [sic] requests that the Wife, specifically, [sic] not be permitted to record in any fashion and/or, further, [sic] attempt to interfere with, [sic] the [GAL's] home visit to her residence."

66. Undeterred by GAL Fox's attempts to use court papers to bully her into submission, in late November 2022, Ms. Martin also sought to assert her rights under the ADA with Dr. Lewis-Thomas.

67. Again, Ms. Martin requested a notetaker. Again, she was criticized, bullied, and humiliated.

68. First, Dr. Lewis-Thomas responded to Ms. Martin's request with anecdotal disbelief: "My [redacted] has lupus and I have had several patients with lupus and we haven't had to have a medical support person. What would you need them for?"

69. After Ms. Martin offered a correction—that "no one person has the same [treatment] protocol"—Ms. Martin elaborated:

> I am a disabled person in need of a disability support person to provide at a minimum, but not limited to, communication support in medical appointments with you and lessening of stress to avoid exacerbation of my disability in medical appointments with you. The law, and the court has already recognized my right under the law to a disability support person and a note taker and the law is well established. Please let me know whether you are going to permit me to have my medical support person there or not. I will assume yes unless you tell me no. Thanks and have a great evening.

70. Dr. Lewis-Thomas, again in disbelief, responded: "please advise how a medical support person would reduce your stress." Dr. Lewis-Thomas further remarked that "another person in the room . . . is not conducive to therapy." Dr. Lewis-Thomas concluded: "You cannot have a medical assistant in the session tomorrow."

71. As a result, Dr. Lewis-Thomas suspended Ms. Martin's right to attend court-ordered therapy, leaving Ms. Martin with a classic Hobson's choice: attend therapy without the right to lawful accommodations or be in violation of a court's requirements to attend same.

72. A few days later, on November 23, 2022, GAL Fox emailed Ms. Martin's counsel:

It has been brought to my attention that Ms. Martin has advised Dr. Lewis Thomas that she requires a medical assistant during therapy due to her disabilities. Dr. Lewis Thomas is not going to accommodate this request . . . . I continue to remain extremely concerned about the decline in Ms. Martin's mental health that is being reported to me as part of my investigation. I do not believe that it is in the child's best interest for Ms. Martin to have unsupervised time-sharing and I believe that her time-sharing, which is equal and unsupervised, should be immediately suspended . . . .

73.     In other words, GAL Fox—distraught over Ms. Martin's *audacity* that she *dare* attempt to assert her federally protected rights by requesting a notetaker—alluded to forthcoming retaliation should Ms. Martin not backtrack on her asserted ADA accommodations.

74.     It bears repeating: GAL Fox's statement that he would recommend full suspension of Ms. Martin's timesharing is not only flagrant disability discrimination, but it is also a willful and wanton abuse of his authority under color of law. Conditioning Ms. Martin's fitness as a parent—not to mention the rights of, and to, her minor child—on Ms. Martin's compliance with his own non-acceptance of her rights to disability accommodations under the ADA is precisely the evil against which the ADA was intended to prevent.

75.     But GAL Fox was not done; he'd soon double down. At a January 25, 2023, hearing on a separate matter, GAL Fox, *under oath*, complained: "I have been unable to observe Ms. Martin with the child. She has intentionally obstructed my ability to do so. What she has now done is she now claims to be disabled, and she now claims that she needs to have a note-taker present." *But see, e.g., supra* ¶ 59(a)–(b).

76.     Under oath, GAL Fox continued: "the mother is claiming that under the Americans With Disabilities Act, she needs to be [sic] a note-taker present. I would be remiss not to bring to the Court's attention that I have never seen any ADA accommodations for her throughout Dr. Faust's social investigation or any other Court proceedings."

77. Still under oath, GAL Fox was as *obstinate* in his discrimination as he was *emphatic*: **"I'm not going to agree that a note-taker is going to be present while I observe the child."**

78. Undeniably, GAL Fox's failure to "see[] any ADA accommodations," and particularly those granted by ADA Coordinator Simpkins on August 17, 2022, is not Ms. Martin's failure. It is the systemic failure of the Eleventh Judicial Circuit for Miami-Dade County, one that begins with ADA Coordinator Simpkins, one that extends to Hon. Cuesta, and one that trickles down to GAL Fox.

79. Meanwhile, later that evening, Hon. Cuesta issued a *sua sponte* "Order to Appear in Person for Future Hearings," ordering that "all future hearings [be] in person . . . ."

80. Apparently, Ms. Martin's rights as a disabled person were so nonexistent to Hon. Cuesta that Hon. Cuesta felt the need to advance relief neither party asked for, and relief in diametric opposition to the remote proceeding accommodation Ms. Martin had previously sought.

81. On February 22, 2023, Ms. Martin filed her "Notice of Refusal and/or Failure of Guardian *ad Litem* to Schedule Visit." There, Ms. Martin put Hon. Cuesta on express notice that Ms. Martin had attempted to schedule a home visit as required, but GAL Fox refused:

> [T]he Guardian ad litem stated that "I cannot attend a home visit if you would like to have a note taker present." To the extent that the Guardian ad litem implies that he need not comply with this Court's ruling if Ms. Martin needs to have a note-taker present, or the Guardian ad litem seeks to prevent Ms. Martin from having a note-taker present, the Guardian ad litem is reminded that the Supremacy Clause of the United States Constitution results in the protections afforded Ms. Martin under the American with Disabilities Act, 42 U.S.C. §12101 preempting any state law that might otherwise permit this Court to preclude Ms. Martin from having a notetaker present; and that any interference with Ms. Martin's enjoyment of the rights afforded under the ADA would likely give rise to a claim against the Guardian ad litem (and others) under 42 U.S.C. § 1983 for violation of Ms. Martin's civil rights.

82.     Then came the February 28, 2023, hearing on GAL Fox's Motion to Compel. There, counsel for Ms. Martin explained: "There is no obligation of Ms. Martin to waive her rights under the Americans with Disabilities Act to facilitate the Guardian's visit. There is no right for the Guardian to insist that Ms. Martin waive her rights under the Americans with Disabilities Act."

83.     Ms. Martin's counsel continued: "As a reasonable accommodation, which the Americans with Disabilities Act requires -- this isn't voluntary; this isn't something I need the Guardian's permission to do or that he can force a waiver of -- she is entitled . . . she's entitled to have a note-taker present at all proceedings in this matter. . . . She's entitled to it as a matter of federal law. The Guardian can't take it away. I suggest this Court wouldn't take it away. And there's nothing that would impair the Guardian from going forward with a note-taker present. It's that simple."

84.     Yet, for GAL Fox, it was not that simple. GAL Fox retorted: "I think it is completely inappropriate for a note-taker to be appointed . . . ."

85.     Neither was it that simple for Hon. Cuesta: "I think maybe you should file some type of motion. . . . Please file your motion. Tell me exactly what you are requesting and why and the authority." *But see ADA Request for Accommodations*, Eleventh Jud. Cir. Fla., https://www.jud11.flcourts.org/ADA-Request-for-Accommodations (last visited Sept. 18, 2023) (providing, as the sole mechanism to individuals with disabilities who require accommodations, a form that the individual must complete and "return [] to the Eleventh Judicial Circuit Court's ADA Coordinator").

86.     On or around March 23, 2023, and despite being required to jump through additional, time- and cost-prohibitive hoops that other disabled and non-disabled individuals in the Eleventh Judicial Circuit of Florida are not required to hurdle, *see id.*, Ms. Martin filed her "Notice

Regarding Required Accommodation Pursuant to Americans with Disabilities Act, 42 U.S.C. [§] 12101, *et seq.*" *See* Exhibit C.

87. There, Ms. Martin *again* placed the trial court on express notice by describing her disabilities; she cited to the trial court the pertinent provisions of the law; she attached proof of the accommodations she received from the trial court's ADA Coordinator; and she explained: "Any refusal [by Hon. Cuesta] to afford this accommodation would violate the ADA." *Id.* at 2, ¶ 6.

88. Hon. Cuesta *refused*.

89. The next day, Hon. Cuesta issued an Order castigating Ms. Martin for her obstruction of GAL Fox's investigation. *See* Exhibit D. Hon. Cuesta was unequivocal:

    a. "This Court is concerned that the Wife has not allowed the Guardian to conduct a home visit which is such a routine yet crucial part of the Guardian's investigation." *Id.* ¶ 3.

    b. "[T]he Court is very concerned about the Guardian ad Litem's home visit to the Wife's residence to observe the Wife and the parties' minor child not having taken place." *Id.* ¶ 3.

    c. "Additionally, as indicated above, Wife has not allowed the Guardian ad litem to conduct a home visit of her home." *Id.* ¶ 4.

90. Emboldened by Hon. Cuesta's reaffirmance of the *seeming non-existence* of Ms. Martin's rights under the ADA, GAL Fox thereafter embarked upon a series of harassing and discriminatory communications:

    a. On July 17, 2023, GAL Fox emailed Ms. Martin's counsel: "Is your client going to allow a visit with just me, her, and the child?"

b. On July 31, 2023, GAL Fox—dissatisfied with his response from Ms. Martin's counsel—emailed again: "please provide me with an answer so we can coordinate a visit."

c. On August 3, 2023, Ms. Martin's counsel explained: "The answer to your question awaits disposition of the attached Motion, and appellate review of any decision adverse to my client or that otherwise infringes upon her statutory rights, including but not limited to the ADA."

d. On August 13, 2023, GAL Fox emailed yet again: "I honestly do not believe how you can support this position on behalf of your client. Ms. Martin's continued obstructive tactics related to the Guardian Ad Litem's investigation is not going to be perceived well by the Court. Please have your client reconsider her position."

e. On August 13, 2023, Ms. Martin's counsel sought clarification: "please advise how Ms. Martin's invocation of her statutory rights under the ADA (which is what I assume you are referring to) are (or could be construed as) 'obstructive tactics,' or could possibly be perceived by the Court as other than well-founded and in good faith."

f. On August 28, 2023, GAL Fox responded: "Not allowing the Guardian Ad Litem to see a parent with a child is certainly interfering with the investigation. I can tell you that this is not something that a Judge will appreciate. Please provide the Guardian Ad Litem with records evidencing that your client is disabled."

g. And on September 17, 2023, GAL Fox *texted* Ms. Martin: "I'm not willing to meet with you and [the minor child] with a note taker present."

91. That is not all. On September 5, 2023, Hon. Cuesta conducted a remotely held uniform motion calendar hearing. It was open to the public.

92. There, Ms. Martin sought, *inter alia*, a Motion for Continuance. Also there, Ms. Martin personally secured (and paid for) a notetaker to be present over Zoom.

93. Hon. Cuesta responded to Ms. Martin's notetaker by *removing* the notetaker from the hearing and did so without any legitimate, nondiscriminatory reason. Upon removal, the notetaker received the following message: "The host has removed you from this meeting."

94. After being removed, the notetaker attempted to return. But a return was futile, as she was "unable to rejoin this meeting because [she] [was] previously removed by the host."

95. The harassment must cease. The discrimination must end. Ms. Martin has federally protected rights. And this Honorable Court—unlike the Eleventh Judicial Circuit of Florida; unlike Hon. Cuesta; unlike GAL Fox; and unlike Dr. Lewis-Thomas—must recognize, respect, and vindicate Ms. Martin's rights under federal law.

### COUNT I — VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, CODIFIED AT 42 U.S.C. § 12132
**(as against Defendants Honorable Ivonne Cuesta and Eleventh Judicial Circuit of Florida)**

96. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 above, as though fully set forth herein.

97. This cause of action is being brought under Title II of the ADA, for continuing violations of 42 U.S.C. § 12131(1) against Defendants Honorable Ivonne Cuesta, in her official capacity as Circuit Court Judge for the Eleventh Judicial Circuit of Florida, and the Eleventh Judicial Circuit of Florida (collectively, "Courthouse Defendants").

98. At all material times hereto, ADA Coordinator Simpkins was and is an agent acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of her agency relationship with the Eleventh Judicial Circuit of Florida.

99. At all material times hereto, Hon. Cuesta was and is an agent acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of her agency relationship with the Eleventh Judicial Circuit of Florida.

100. Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

101. Courthouse Defendants are "public entities" within the meaning of 42 U.S.C. § 12131(1).

102. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2).

103. Courthouse Defendants' actions, as alleged herein, have discriminated against and continue to discriminate against Ms. Martin and deny her access to, and meaningful participation in, the benefits of essential state services on the basis of her disability. *C.f.* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

104. Specifically, Courthouse Defendants discriminated against and continue to discriminate against Ms. Martin by, *inter alia*: failing to provide lawful accommodations, failing to communicate as to granted accommodations, failing to investigate accommodations, failing to recognize her disability and rights under the ADA, failing to pay for accommodations, forcing Ms. Martin to seek accommodations in a different manner compared to other disabled individuals,

treating non-disabled parties more favorably, allowing and enabling GAL Fox to bully, harass, humiliate, and discriminate against Ms. Martin on the basis of her disability, kicking Ms. Martin's notetaker out of a hearing, and more.

105. Such discrimination amounts to an unconstitutional deprivation of Ms. Martin's procedural and substantive due process rights, a violation of her equal protection rights without rational basis, and a denial of her access to courts.

106. Courthouse Defendants' discrimination, exclusion, and disparate treatment is intentional, ongoing, continuous, unceasing, and by reason of the Plaintiff's disability.

107. There is a real and immediate threat of future and repeated injury, as the Underlying Action is ongoing and still being litigated to this day, with all of the same actors, officials, parties, agents, pertinent issues, and discriminatory conduct directed against Plaintiff. Absent this Honorable Court's intervention, the discrimination, *supra*, will continue.

108. Courthouse Defendants have also failed and continue to fail to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program, or activity, or segregated on the basis of their disability.

109. As a direct and proximate result of Courthouse Defendants' acts as alleged herein, Ms. Martin has suffered and continues to suffer irreparable harm and seeks requisite relief.

**WHEREFORE**, Plaintiff, BETH COLLEEN MARTIN, respectfully requests:

i. A declaratory judgment finding Courthouse Defendants' ongoing and continuous course of conduct violates Title II and its implementing regulations;

ii. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 35.160(a)1 and (b)1 directing Defendant Eleventh Judicial Circuit of Florida to take steps necessary to bring its policies into full compliance with the requirements set forth in

the ADA, and its implementing regulations, so that its services are fully accessible to, and independently usable by Plaintiff and any similarly situated disabled individuals;

iii. Injunctive relief directing Hon. Cuesta to recuse herself from the Underlying Action;

iv. Injunctive relief directing Hon. Cuesta to enroll in, engage in, and complete a requisite ADA training and/or certification program;

v. Payment of reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

vi. Such other and further relief this Court deems just and proper under the circumstances.

## COUNT II — VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, CODIFIED AT 42 U.S.C. § 12132
**(as against Defendants Sandy T. Fox and the Eleventh Judicial Circuit of Florida)**

110. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 above, as though fully set forth herein.

111. This cause of action is being brought under Title II of the ADA, for continuing violations of 42 U.S.C. § 12131(1) against Defendants Sandy T. Fox, in his official capacity as Guardian ad Litem, and the Eleventh Judicial Circuit of Florida.

112. At all material times hereto, GAL Fox was and is an agent acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of his agency relationship with the Eleventh Judicial Circuit of Florida. *See Franklin & Criscuolo/Lienor v. Etter*, 924 So. 2d 947, 949 (Fla. 3d DCA 2006) ("When a guardian ad litem is appointed, the guardian ad litem is regarded as the agent of the court."); *James v. James*, 64 So. 2d 534, 536 (Fla. 1953) (same); *see also Tutein v. Arteaga*, 60 V.I. 709, 718 n.5 (2014) (collecting cases).

113. Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

114. At all material times hereto, GAL Fox was and is acting in his official capacity as Guardian ad Litem, and is therefore a "public entity" within the meaning of 42 U.S.C. § 12131(1).

115. The Eleventh Judicial Circuit of Florida is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

116. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2).

117. GAL Fox's actions, as alleged herein, have discriminated against and continue to discriminate against Ms. Martin and deny her access to, and meaningful participation in, the benefits of essential state services on the basis of her disability. *C.f.* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

118. Specifically, GAL Fox discriminated against and continues to discriminate against Ms. Martin on the basis of her disability by, *inter alia*: bullying her, ridiculing her, criticizing her, humiliating her, retaliating and/or threatening retaliation against her, ostracizing her, marginalizing her, refusing to accommodate her disability, refusing to investigate due to her disability, and more.

119. Such discrimination amounts to an unconstitutional deprivation of Ms. Martin's procedural and substantive due process rights, a violation of her equal protection rights without rational basis, and a denial of her access to courts.

120. GAL Fox's discrimination, exclusion, and disparate treatment are intentional, ongoing, continuous, unceasing, and by reason of Plaintiff's disability.

121. There is a real and immediate threat of future and repeated injury, as the Underlying Action is ongoing, GAL Fox is still the court-appointed Guardian ad Litem, and the Underlying Action is still being litigated to this day, with all of the same actors, officials, parties, agents, pertinent issues, and discriminatory conduct directed against Plaintiff. Absent this Honorable Court's intervention, the discrimination, *supra*, will continue.

122. As a direct and proximate result of GAL Fox's acts as alleged herein, Ms. Martin has suffered and continues to suffer irreparable harm and seeks requisite relief.

123. The Eleventh Judicial Circuit of Florida is vicariously liable for GAL Fox's aforesaid discrimination under the principles of *respondeat superior*, since at the time GAL Fox engaged in his unlawful discrimination, he was (and still is) acting in his official capacity as Guardian ad Litem for the Eleventh Judicial Circuit of Florida, and at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of his agency relationship with the Eleventh Judicial Circuit of Florida.

124. GAL Fox and the Eleventh Judicial Circuit of Florida have also failed and continue to fail to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program, or activity, or segregated on the basis of their disability.

**WHEREFORE**, Plaintiff, BETH COLLEEN MARTIN, respectfully requests:

i. A declaratory judgment finding Defendants' ongoing and continuous course of conduct violates Title II and its implementing regulations;

ii. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 35.160(a)1 and (b)1 directing Defendant Eleventh Judicial Circuit of Florida to take steps necessary to bring its policies into full compliance with the requirements set forth in

the ADA, and its implementing regulations, so that its services are fully accessible to, and independently usable by Plaintiff and any similarly situated disabled individuals;

vii.    Injunctive relief directing GAL Fox to recuse himself from the Underlying Action;

viii.    Injunctive relief directing GAL Fox to enroll in, engage in, and complete a requisite ADA training and/or certification program;

iii.    Payment of reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

iv.    Such other and further relief this Court deems just and proper under the circumstances.

## COUNT III — VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, CODIFIED AT 42 U.S.C. § 12132
**(as against Defendant Eleventh Judicial Circuit of Florida for damages)**

125.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 above, as though fully set forth herein.

126.    This cause of action is being brought under Title II of the ADA, for past violations of 42 U.S.C. § 12131(1) against Defendant Eleventh Judicial Circuit of Florida.

127.    At all material times hereto, ADA Coordinator Simpkins was and is an agent acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of her agency relationship with the Eleventh Judicial Circuit of Florida.

128.    At all material times hereto, GAL Fox was an agent acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of his agency relationship with the Eleventh Judicial Circuit of Florida. *See Franklin & Criscuolo/Lienor v. Etter*, 924 So. 2d 947, 949 (Fla. 3d DCA 2006) ("When a guardian ad litem is appointed, the guardian ad litem is regarded as the agent of the court."); *James v. James*, 64 So.

2d 534, 536 (Fla. 1953) (same); *see also Tutein v. Arteaga*, 60 V.I. 709, 718 n.5 (2014) (collecting cases).

129. At all material times hereto, Hon. Cuesta was and is an agent acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of her agency relationship with the Eleventh Judicial Circuit of Florida.

130. Under Title II, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

131. The Eleventh Judicial Circuit of Florida is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

132. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2).

133. The Eleventh Judicial Circuit of Florida's actions, as alleged herein, have discriminated against Ms. Martin and denied her access to, and meaningful participation in, the benefits of essential state services on the basis of her disability. *C.f.* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

134. Specifically, the Eleventh Judicial Circuit of Florida, through its agents, has discriminated against Ms. Martin by, *inter alia*: failing to provide lawful accommodations, failing to communicate as to granted accommodations, failing to investigate accommodations, failing to recognize her disability and rights under the ADA, failing to pay for accommodations, forcing Ms. Martin to seek accommodations in a different manner compared to other disabled individuals, treating non-disabled parties more favorably, allowing and enabling GAL Fox to bully, harass,

humiliate, ostracize, ridicule, threaten retaliation, and discriminate against Ms. Martin on the basis of her disability, kicking Ms. Martin's notetaker out of a hearing, and more.

135. Such discrimination amounts to an unconstitutional deprivation of Ms. Martin's procedural and substantive due process rights, a violation of her equal protection rights without rational basis, and a denial of her access to courts.

136. The Eleventh Judicial Circuit of Florida's discrimination, exclusion, and disparate treatment is intentional and by reason of the Plaintiff's disability.

137. The Eleventh Judicial Circuit of Florida is vicariously liable for the aforesaid discrimination under the principles of *respondeat superior*.

138. As a direct and proximate result of the Eleventh Judicial Circuit's acts as alleged herein, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff, BETH COLLEEN MARTIN, respectfully requests:

i. Compensatory damages in an amount to be determined according to proof;

ii. Payment of reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

iii. Such other and further relief this Court deems just and proper under the circumstances.

**COUNT IV — VIOLATION OF THE REHABILITATION ACT OF 1973, CODIFIED AT 29 U.S.C. § 794**
**(as against Defendants Honorable Ivonne Cuesta and Eleventh Judicial Circuit of Florida)**

139. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 above, as though fully set forth herein.

140. This cause of action is being brought under Section 505 of the Rehabilitation Act of 1973, through which Section 504 is enforced, against Defendants Honorable Ivonne Cuesta, in

her official capacity as Circuit Court Judge for the Eleventh Judicial Circuit of Florida, and the Eleventh Judicial Circuit of Florida (collectively, "Courthouse Defendants").

141. At all material times hereto, Hon. Cuesta was and is acting in her official capacity as Circuit Court Judge for the Eleventh Judicial Circuit of Florida, and as an agent acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of her agency relationship with the Eleventh Judicial Circuit of Florida.

142. As particularly alleged above, Courthouse Defendants are recipients of federal financial assistance, subjecting them to the Rehabilitation Act's prohibition on discrimination.

143. Under 29 U.S.C. § 794(a), "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

144. Courthouse Defendants provide "programs or activities" within the within the meaning of 29 U.S.C. § 794(b)(1)(A).

145. Plaintiff is a "qualified individual with a disability" within the meaning of 29 U.S.C. § 794(a). *See also* 29 U.S.C. § 705 (20).

146. Courthouse Defendants' actions, as alleged herein, have discriminated against Ms. Martin and denied her access to, and meaningful participation in, the benefits of essential state services on the basis of her disability. *C.f.* 29 U.S.C. § 794(a).

147. Specifically, Courthouse Defendants have discriminated against and continue to discriminate against Ms. Martin and obstruct her access to the court system by, *inter alia*: failing to provide lawful accommodations, failing to communicate as to granted accommodations, failing to investigate accommodations, failing to recognize her disability and rights under the ADA,

failing to pay for accommodations, forcing Ms. Martin to seek accommodations in a different manner compared to other disabled individuals, treating non-disabled parties more favorably, allowing and enabling GAL Fox to bully, harass, humiliate, and discriminate against Ms. Martin on the basis of her disability, kicking Ms. Martin's notetaker out of a hearing, and more.

148. Such discrimination amounts to an unconstitutional deprivation of Ms. Martin's procedural and substantive due process rights, a violation of her equal protection rights without rational basis, and a denial of her access to courts.

149. Courthouse Defendants' discrimination, exclusion, and disparate treatment is intentional, ongoing, continuous, unceasing, and by reason of Plaintiff's disability.

150. There is a real and immediate threat of future and repeated injury, as the Underlying Action is ongoing and still being litigated to this day, with all of the same actors, officials, parties, agents, pertinent issues, and discriminatory conduct directed against Plaintiff. Absent this Honorable Court's intervention, the discrimination, *supra*, will continue.

151. Courthouse Defendants have also failed and continue to fail to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program or activity, or segregated on the basis of her disability.

152. As a direct and proximate result of Courthouse Defendants' acts as alleged herein, Ms. Martin has suffered and continues to suffer irreparable harm and seeks requisite relief.

**WHEREFORE**, Plaintiff, BETH COLLEEN MARTIN, respectfully requests:

i. A declaratory judgment finding Courthouse Defendants' ongoing and continuous course of conduct violates Section 504 of the Rehabilitation Act and its implementing regulations;

ii.     A permanent injunction pursuant to 29 U.S.C. § 794(a) and 28 CFR § 35.160(a)1 and (b)1 directing Defendant Eleventh Judicial Circuit of Florida to take steps necessary to bring its policies into full compliance with the requirements set forth in the Rehabilitation Act and its implementing regulations so that its services are fully accessible to, and independently usable by Plaintiff and any similarly situated disabled individuals;

ix.     Injunctive relief directing Hon. Cuesta to recuse herself from the Underlying Action;

x.      Injunctive relief directing Hon. Cuesta to enroll in, engage in, and complete a requisite Rehabilitation Act training and/or certification program;

iii.    Payment of reasonable attorney's fees and costs, pursuant to § 794(a)(b) and 28 CFR § 36.505; and

iv.     Such other and further relief this Court deems just and proper under the circumstances.

**COUNT V — VIOLATION OF THE REHABILITATION ACT OF 1973, CODIFIED AT 29 U.S.C. § 794**
**(as against Defendants Sandy T. Fox and Eleventh Judicial Circuit of Florida)**

153.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 above, as though fully set forth herein.

154.    This cause of action is being brought under Section 505 of the Rehabilitation Act of 1973, through which Section 504 is enforced, against the Defendants Sandy T. Fox, in his official capacity as Guardian ad Litem, and the Eleventh Judicial Circuit of Florida.

155.    At all material times hereto, GAL Fox was and is an agent acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of his agency relationship with the Eleventh Judicial Circuit of Florida. *See Franklin & Criscuolo/Lienor v. Etter*, 924 So. 2d 947, 949 (Fla. 3d DCA 2006) ("When a guardian ad litem is

appointed, the guardian ad litem is regarded as the agent of the court.”); *James v. James*, 64 So. 2d 534, 536 (Fla. 1953) (same); *see also Tutein v. Arteaga*, 60 V.I. 709, 718 n.5 (2014) (collecting cases).

156. As particularly alleged above, the Eleventh Judicial Circuit of Florida is a recipient of federal financial assistance, subjecting it to the Rehabilitation Act’s prohibition on discrimination.

157. Under 29 U.S.C. § 794(a), “No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .”

158. The Eleventh Judicial Circuit of Florida provides “programs or activities” within the within the meaning of 29 U.S.C. § 794(b)(1)(A).

159. Plaintiff is a “qualified individual with a disability” within the meaning of 29 U.S.C. § 794(a). *See also* 29 U.S.C. § 705 (20).

160. GAL Fox’s actions have discriminated against and continue to discriminate against Ms. Martin and deny her access to, and meaningful participation in, the benefits of essential state services on the basis of her disability. *C.f.* 29 U.S.C. § 794(a).

161. Specifically, GAL Fox has refused and continues to refuse to conduct an investigation due to Ms. Martin’s lawful request and receipt of accommodations, and instead, has engaged and continues to engage in a wholesale course of bullying, ridiculing, criticizing, humiliating, retaliating and/or threating retaliation, ostracizing, marginalizing, excluding, and more, toward and against Ms. Martin, all on the basis of her disability.

162. Such discrimination amounts to an unconstitutional deprivation of Ms. Martin's procedural and substantive due process rights, a violation of her equal protection rights, and a denial of her access to courts.

163. GAL Fox's discrimination, exclusion, and disparate treatment are intentional, ongoing, continuous, unceasing, and by reason of Plaintiff's disability.

164. There is a real and immediate threat of future and repeated injury, as the Underlying Action is ongoing, GAL Fox is still the court-appointed Guardian ad Litem, and the Underlying Action is still being litigated to this day, with all of the same actors, officials, parties, agents, issues, and discriminatory conduct directed against Plaintiff. Absent this Honorable Court's intervention, the discrimination, *supra*, will continue.

165. As a direct and proximate result of GAL Fox's acts as alleged herein, Ms. Martin has suffered and continues to suffer irreparable harm and seeks requisite relief.

166. The Eleventh Judicial Circuit of Florida is vicariously liable for GAL Fox's aforesaid discrimination under the principles of *respondeat superior*, since at the time GAL Fox engaged in his unlawful discrimination, he was (and still is) acting in his official capacity as Guardian ad Litem for the Eleventh Judicial Circuit of Florida, and at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of his agency relationship with the Eleventh Judicial Circuit of Florida.

167. GAL Fox and the Eleventh Judicial Circuit of Florida have also failed and continue to fail to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied participation in a service, program or activity, or segregated on the basis of her disability.

**WHEREFORE**, Plaintiff, BETH COLLEEN MARTIN, respectfully requests:

i. A declaratory judgment finding Defendants' ongoing and continuous course of conduct violates Section 504 of the Rehabilitation Act and its implementing regulations;

ii. A permanent injunction pursuant to 29 U.S.C. § 794(a) and 28 CFR § 35.160(a)1 and (b)1 directing Defendant Eleventh Judicial Circuit of Florida to take steps necessary to bring its policies into full compliance with the requirements set forth in the Rehabilitation Act and its implementing regulations so that its services are fully accessible to, and independently usable by Plaintiff and any similarly situated disabled individuals;

xi. Injunctive relief directing GAL Fox to recuse himself from the Underlying Action;

xii. Injunctive relief directing GAL Fox to enroll in, engage in, and complete a requisite Rehabilitation Act training and/or certification program;

iii. Payment of reasonable attorney's fees and costs, pursuant to § 794(a)(b) and 28 CFR § 36.505; and

iv. Such other and further relief this Court deems just and proper under the circumstances.

## COUNT VI — RETALIATION, INTERFERENCE, COERCION, AND INTIMIDATION
### (42 U.S.C. § 12203)
**(as against Defendant Eleventh Judicial Circuit of Florida for damages)**

168. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 above, as though fully set forth herein.

169. This is an action for violation of the ADA's prohibition against retaliation and coercion, which provides, in pertinent part: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual

in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b); *see* 42 U.S.C. § 12203(a) (prohibiting retaliation); *see also* 28 C.F.R. § 35.134.

170. Freedom from a public entity's disability discrimination is a right granted or protected under the foregoing chapter. *See* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

171. The Eleventh Judicial Circuit of Florida is a "public entity" within the meaning of 42 U.S.C. § 12131(1).

172. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2).

173. On or around September 20, 2023, Ms. Martin filed the instant lawsuit in the Southern District of Florida in which Ms. Martin asserted claims against, *inter alia*, the Eleventh Judicial Circuit of Florida for violations of Title II of the ADA and the Rehabilitation Act.

174. Ms. Martin's filing of the instant lawsuit constitutes a protected activity within the meanings of 42 U.S.C. §12203(a)–(b) and 28 C.F.R. § 35.134.

175. On or around September 26, 2023, the Eleventh Judicial Circuit of Florida was served with process of the instant lawsuit. *See* ECF No. 7 ¶ 1.

176. The Underlying Action was scheduled for a five-day final hearing solely related to financial matters,[1] which final hearing was set to commence in-person on October 2, 2023, and continue through October 6, 2023.

---

[1] The final trial for child-related issues is set to be scheduled at a later date.

177. On October 2, 2023, Ms. Martin—accompanied by her attorneys and a notetaker—entered the courtroom and sat down at her respective table.

178. Also in the courtroom were, *inter alia*, Hon. Cuesta, her J.A., the bailiff, and *two armed Sheriff's Deputies*.

179. Prior to the instant lawsuit being filed, no armed Sheriff's Deputies had ever made any type of appearance in the Underlying Action.

180. Upon information and belief, it is neither a practice nor a regular occurrence—not even a *rare* occurrence—for the Eleventh Judicial Circuit of Florida to station two armed Sheriff's Deputies directly behind a party to a DOM proceeding. Rather, upon information and belief, this was the sole, lone occurrence.

181. After some back and forth with Hon. Cuesta in which the parties agreed to narrow the issues and explore potential settlement outside the courtroom over the course of the day, Hon. Cuesta got up from the bench to exit.

182. Prior to exiting, Hon. Cuesta made a point to walk toward Ms. Martin and stand approximately ten inches in front of Ms. Martin's table.

183. There, Hon. Cuesta looked straight into Ms. Martin's eyes and said to the two armed Sheriff's Deputies standing behind Ms. Martin: *Thank you officers for being here today.*

184. Thereafter, Ms. Martin, her attorneys, and her notetaker exited the courtroom. The armed Sheriff's Deputies *followed*.

185. Upon information and belief, an emergency DV hearing was conducted in Hon. Cuesta's courtroom while the parties were outside discussing settlement. The two armed Sheriff's Deputies remained outside the courtroom during this time.

186. Thereafter, Ms. Martin, her attorneys, and her notetaker returned to the courtroom. So, too, did the two armed Sheriff's Deputies.

187. Each time Ms. Martin looked at the Sheriff's Deputies—on at least three separate occasions—Ms. Martin observed the Sheriff's Deputies' hands on their weapons and the Sherriff's Deputies were looking directly at her.

188. Ms. Martin reasonably understood the presence of the two armed Sheriff's Deputies to be a calculated message of coercion, intimidation, threats, interference, and/or retaliation sent by the Eleventh Judicial Circuit of Florida.

189. A reasonable person in Ms. Martin's position would have felt coerced, intimidated, threatened, interfered with, and/or retaliated against by the presence of two armed Sheriff's Deputies, stationed in the courtroom directly behind Ms. Martin, with their hands on their weapons and eyes on Ms. Martin.

190. Fearful that the unwarranted, uncalled for, and unnecessary presence of the two armed Sheriff's Deputies portended an ill-advised ruling—or worse, physical harm, physical restraint, or loss of liberty through a retaliatory finding of contempt—Ms. Martin reasonably felt she had no choice but to submit to settlement, *whatever the cost*.

191. The foregoing adverse and retaliatory actions occurred as a direct result of Ms. Martin's initiation of the instant lawsuit.

192. The effect of the Eleventh Judicial Circuit of Florida's actions and conduct has been to deprive Ms. Martin of the opportunity of a fair trial on financial matters, coerce and intimidate her into signing a settlement agreement in lieu of trial, cause her to reasonably fear for her liberty and safety at future hearings, and cause her to reasonably believe she cannot receive a fair trial in the Underlying Action.

193. Such retaliation amounts to an unconstitutional deprivation of Ms. Martin's procedural and substantive due process rights, a violation of her equal protection rights without rational basis, and a denial of her access to courts.

194. The Eleventh Judicial Circuit of Florida is vicariously liable for the aforesaid retaliation, interference, coercion, threats, and/or intimidation under the principles of *respondeat superior*, since at the time Hon. Cuesta and the two armed Sheriff's Deputies engaged in their unlawful acts of retaliation, interference, coercion, threats, and/or intimidation, each were agents acting at the direction and control of, in furtherance of the interest of, and within the actual or apparent course and scope of their agency relationships with the Eleventh Judicial Circuit of Florida.

195. As a direct and proximate result of the Eleventh Judicial Circuit's acts as alleged herein, Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff, BETH COLLEEN MARTIN, respectfully requests:

i. Compensatory damages in an amount to be determined according to proof;

ii. Payment of reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

iii. Such other and further relief this Court deems just and proper under the circumstances.

### <u>COUNT VII — VIOLATION OF 42 U.S.C. § 1983</u>
**(as against Defendant Sandy T. Fox in his individual capacity)**

196. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 above, as though fully set forth herein.

197. This cause of action is being brought under 42 U.S.C. § 1983 against Defendant Fox in his individual capacity.

198. As a "qualified individual with a disability," Ms. Martin has a statutory right not to be excluded, segregated, or denied participation in the services, programs, or activities of a public entity on the basis of her disability. 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a).

199. As a "qualified individual with a disability," Ms. Martin has a statutory right not to be discriminated against on the bases of her disability, her need for accommodations, or her request(s) thereof. *See* 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a).

200. Ms. Martin also enjoys constitutional rights to access the courts, procedural due process, substantive due process, and equal protection. *See* Fla. Const. Art. I, § 21; U.S. Const. amend. 14, § 1.

201. On or around November 23, 2020, Defendant Fox was given power and authority by the state of Florida when Hon. Cuesta entered an order in the Underlying Action appointing Defendant Fox to the position of Guardian ad Litem.

202. At all material times hereto, Defendant Fox was a willful participant in joint activity with the State or its agents and was therefore acting under color of law for purposes of this § 1983 action.

203. As particularly alleged above, Defendant Fox abused the power and authority given to him and is therefore an individual acting under color of law, as he has, *inter alia*: (i) refused to provide Ms. Martin with reasonable accommodations under the ADA; (ii) discriminated against her on the basis of her disability; and (iii) deprived Ms. Martin of her constitutional rights to: (a) due process by precluding her ability to be meaningfully heard in the Underlying Action through his refusal to conduct a home visit; (b) access the courts through full participation in a mandatory court-ordered home visit in the Underlying Action; and (c) equal protection by limiting her ability to participate in a home visit without rational basis on account of her disability.

204. Defendant Fox committed the acts alleged herein despicably, maliciously, fraudulently, oppressively, and/or in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. As a result of such bad faith actions taken against Plaintiff, Defendant Fox is not entitled to statutory or common law immunity.

205. As a direct and proximate result of Defendant Fox's acts as alleged herein, Ms. Martin has suffered and continues to suffer damages.

206. Accordingly, Ms. Martin brings this action for equitable, declaratory, and monetary relief, demanding an immediate end to Defendant Fox's unlawful conduct and recompense for the damages resulting therefrom.

**WHEREFORE**, Plaintiff, BETH COLLEEN MARTIN, respectfully prays for:

i.   Compensatory damages in an amount to be determined according to proof;

ii.  Injunctive relief as necessary;

iii. A declaration that Defendant Fox's ongoing conduct violates 42 U.S.C. § 12132; 29 U.S.C. § 794(a); and all of its implementing regulations;

iv.  A declaration that Defendant Fox's ongoing conduct violates Fla. Const. Art. I, § 21;

v.   A declaration that Defendant Fox's ongoing conduct violates U.S. Const. amend. 14, § 1.

vi.  The payment of reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988; and

vii. Such other and further relief this Court deems just and proper under the circumstances.

### COUNT VIII — VIOLATION OF 42 U.S.C. § 1983
#### (as against Defendant Sherrie Lewis-Thomas)

207. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 95 above, as though fully set forth herein.

208. As a "qualified individual with a disability," Ms. Martin has a statutory right not to be excluded, segregated, or denied participation in the services, programs, or activities of a public entity on the basis of her disability. 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a).

209. As a "qualified individual with a disability," Ms. Martin has a statutory right not to be discriminated against on the basis of her disability, her need for accommodations, or request thereof. *See* 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a).

210. Ms. Martin also enjoys a constitutional right to access the courts, procedural due process, substantive due process, and equal protection. *See* Fla. Const. Art. I, § 21; U.S. Const. amend. 14, § 1.

211. On or around February 16, 2021, Defendant Lewis-Thomas was given power and authority by the state of Florida when Hon. Cuesta entered an order in the Underlying Action appointing Defendant Lewis-Thomas to the position of court-appointed reunification therapist.[2]

212. At all material times hereto, Defendant Lewis-Thomas was a willful participant in joint activity with the State or its agents and was therefore acting under color of law for purposes of this § 1983 action.

213. As particularly alleged above, Defendant Lewis-Thomas abused the power and authority given to her and is therefore an individual acting under color of law, as she has, *inter alia*: (i) refused to provide Ms. Martin with reasonable accommodations under the ADA; (ii) discriminated against Ms. Martin on the basis of her disability; (iii) deprived Ms. Martin of her constitutional rights to: (a) due process by precluding her ability to be meaningfully heard in the

---

[2] Pursuant to the order, "[b]oth parties shall cooperate to facilitate reunification therapy and neither party shall interfere with the process." Furthermore, Defendant Lewis-Thomas "is authorized to communicate with the parties, counsel for the parties, the child's treating therapist, the Guardian ad litem, and the social investigator."

Underlying Action through her refusal to engage in reunification therapy on account of her disability; (b) access the courts through full participation in required court programs on account of her disability; and (c) equal protection by limiting her ability to participate in reunification therapy without rational basis on account of her disability.

214. Defendant Lewis-Thomas committed the acts alleged herein despicably, maliciously, fraudulently, oppressively, and/or in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice and in willful and conscious disregard of Plaintiff's federally protected rights. As a result of such bad faith actions taken against Plaintiff, Defendant Lewis-Thomas is not entitled to statutory or common law immunity.

215. As a direct and proximate result of Defendant Lewis-Thomas' acts as alleged herein, Ms. Martin has suffered and continues to suffer damages.

216. Accordingly, Ms. Martin brings this action for equitable, declaratory, and monetary relief, demanding an immediate end to Defendant Lewis-Thomas' unlawful conduct and recompense for the damages resulting therefrom.

**WHEREFORE**, Plaintiff, BETH COLLEEN MARTIN, respectfully prays for:

i. Compensatory damages in an amount to be determined according to proof;

ii. Injunctive relief as necessary;

iii. A declaration that Defendant Lewis-Thomas' ongoing conduct violates 42 U.S.C. § 12132; 29 U.S.C. § 794(a); and all of its implementing regulations;

iv. A declaration that Defendant Lewis-Thomas' ongoing conduct violates Fla. Const. Art. I, § 21;

v. A declaration that Defendant Lewis-Thomas' ongoing conduct violates U.S. Const. amend. 14, § 1.

vi.    The payment of reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988; and

vii.   Such other and further relief this Court deems just and proper under the circumstances.

**<u>DEMAND FOR JURY TRIAL</u>**

As to Counts III, VI, VII, and VIII, Plaintiff, BETH COLLEEN MARTIN, hereby demands a trial by jury on all issues so triable.

Dated this 7th day of November 2023.

By: */s/ Reid Levin*
Reid Levin, Esq.
Florida Bar No. 1038933
**Reid Levin, PLLC**
P.O. Box 880682
Boca Raton, Florida 33488
Phone: (561) 866-6089
Email: reid@reidlevinpllc.com
***Attorney for Plaintiff Beth Colleen Martin***

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of November 2023, a true and correct copy of the foregoing has been filed with this Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Reid Levin*
Reid Levin, Esq.